IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AKWETA CLEMMER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:13-CV-4997-D |
| VS. | § | |
| | § | |
| IRVING INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by three former employees of defendant Irving Independent School

District ("IISD") alleging various federal-law discrimination, retaliation, and related claims,

IISD moves for summary judgment. For the reasons that follow, the court largely grants the

motion, dismissing all the claims of two plaintiffs and all but one claim (for retaliation) of

the third plaintiff.

I

This case is the subject of two prior memorandum opinions and orders. *See Clemmer

v. Irving Indep. Sch. Dist.*, 2014 WL 2475924 (N.D. Tex. June 3, 2014) (Fitzwater, C.J.)

("*Clemmer I*"); *Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358 (N.D. Tex. Apr. 17,

2015) (Fitzwater, J.) ("*Clemmer II*"). The court will therefore recount only the background

facts and procedural history pertinent to today's decision.

Plaintiffs Akweta Clemmer ("Clemmer"), Cristina Chen ("Chen"), and Lesa Hill

("Hill") worked in IISD's Special Education Department during the 2011-2012 school year.[1] Clemmer and Hill are African-American, and Chen is of Cuban descent. Clemmer and Chen resigned in July 2012, citing hostile work environment, discrimination, retaliation, and favoritism. At the time plaintiffs filed their second amended complaint, Hill was still employed by IISD, but she is no longer.

In February 2012 plaintiffs submitted grievances to Karry Chapman ("Chapman"), the Interim Assistant Superintendent of Administration for IISD, contending that Mollie Lusty ("Lusty"), the Special Education Director for IISD—and plaintiffs' primary supervisor—showed favoritism to Caucasian staff members, and that they were subjected to hostile work environments, discrimination based on race or national origin, and retaliation for reporting concerns about IISD's treatment of certain students in the Special Education Department. Although Chapman could not substantiate plaintiffs' grievances, she created an Action Plan to address their concerns. Plaintiffs appealed Chapman's decision to Level 1 of the grievance process. IISD hired an outside consultant, Susan Mattison ("Mattison"), to investigate the grievances. Mattison concluded that there was insufficient evidence to prove that it was more likely than not that unlawful discrimination or retaliation occurred. Plaintiffs appealed Mattison's decision, and IISD hired an outside attorney, Camille Stearns-

---

[1]In deciding this motion, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Miller, Esquire ("Stearns-Miller"), to conduct a Level 2 hearing.  Stearns-Miller concluded that some of plaintiffs' allegations survived the summary judgment standard (i.e., there were fact issues with respect to some allegations), and she recommended certain remedial measures.  Plaintiffs appealed Stearns-Miller's decision to the IISD's Board of Trustees (the "Board").  The Board conducted a Level 3 hearing and voted to uphold Stearns-Miller's recommendations.

Plaintiffs then filed intake questionnaires with the Texas Workforce Commission Civil Rights Division ("TWCCRD"), which were dual filed with the Equal Employment Opportunity Commission ("EEOC").  Plaintiffs also filed formal, verified charges of discrimination with the EEOC.  After receiving right to sue letters from the EEOC, plaintiffs filed this lawsuit against IISD, which they have amended through first and second amended complaints.  In the second amended complaint, plaintiffs allege claims under 42 U.S.C. § 1983 for retaliation, in violation of the First Amendment, deprivation of property without due process, in violation of the Fourteenth Amendment, and denial of equal protection, in violation of the Fourteenth Amendment,[2] and they allege claims for hostile work environment, retaliation, and racial discrimination under Title VII of the Civil Rights Act of

_____

[2]The second amended complaint appears to allege a claim for hostile work environment, in violation of the First and Fourteenth Amendments.  But plaintiffs only address their hostile work environment claim under the Title VII section (not the constitutional section) of their response brief, and IISD also only discusses hostile work environment with respect to Title VII.  Accordingly, the court, like the parties, does not interpret the second amended complaint to assert a constitutional hostile work environment claim.

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

IISD moves for summary judgment on all of plaintiffs' claims.[3]  Plaintiffs oppose the motion.

## II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once it does so, the nonmovant must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory where the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

## III

IISD moves to dismiss plaintiffs' constitutional claims on the basis that plaintiffs have not established that they are entitled to relief under § 1983.

---

[3]IISD presents several grounds for dismissal of each of plaintiffs' claims.  When the court dismisses a claim, however, it will only discuss the ground on which it relies to dismiss the claim.

A

"Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). To prevail on a § 1983 claim, plaintiffs "must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Because plaintiffs are suing IISD, they also must satisfy additional requirements. "Under § 1983, a municipality or local government entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). IISD cannot be held liable simply on a theory of *respondeat superior. Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). But it can be held liable if a deprivation of a constitutional right was inflicted pursuant to an official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Plaintiffs must prove three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose

- 5 -

'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (some internal quotation marks omitted).

The first element requires that plaintiffs prove the existence of an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of [IISD] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [IISD] policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)). To satisfy the second element, plaintiffs must prove that "actual or constructive knowledge of a custom [is] attributable to the governing body of [IISD] or to an official to whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542 (brackets omitted) (quoting *Webster*, 735 F.2d at 842) (citing *Piotrowski*, 237 F.3d at 579). The third element requires that plaintiffs prove that the IISD policy or custom was the "moving force" of the constitutional deprivation, which requires a "high

threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694).  At the summary judgment stage, of course, plaintiffs' burden is simply to raise genuine issues of fact on each of these essential elements.

B

IISD contends that plaintiffs have not established that their constitutional free speech (i.e., retaliation) or equal protection injuries were caused by an IISD policy or custom.

1

The parties agree that official IISD policy prohibits constitutional violations, including discrimination, harassment, and retaliation against any employee.  Plaintiffs maintain that, despite this official policy, IISD has a widespread custom or practice of discriminating and retaliating.  Plaintiffs do not allege that the Board directly discriminated or retaliated against them.  Rather, they aver that the Special Education Department discriminated against them on the basis of race or national origin and retaliated against them for speaking out about issues and problems within the district.  They contend that the Board was aware of these constitutional violations because it was given Mattison's report and conducted the Level 3 grievance hearing after receiving the findings by Stearns-Miller that Caucasian women in the Special Education Department were discriminating against and harassing plaintiffs, but that the Board turned a blind eye and did nothing to stop this unconstitutional conduct, essentially ratifying the conduct.

Plaintiffs also contend that the Board and Superintendent failed to properly enforce IISD policy prohibiting unconstitutional treatment of plaintiffs. Plaintiffs posit that the

- 7 -

Superintendent violated IISD policy by failing to properly monitor the Special Education Department for compliance with IISD policy, and/or by failing to inform the Board about discriminatory practices.  Plaintiffs also maintain that the Board violated IISD policy that requires it to ensure that the Superintendent implements and monitors plans and programs, to work with the Superintendent to support the professional development of IISD staff, and to periodically evaluate Board and Superintendent leadership, governance, and teamwork.

2

The Fifth Circuit recently addressed a case with similar facts.  In *Fennell v. Marion Independent School District*, 804 F.3d 398 (5th Cir. 2015), the court affirmed summary judgment dismissing plaintiffs' equal protection claims brought under § 1983 against Marion Independent School District ("Marion ISD").  *Id.* at 413.  The court first noted that "the final policymaker here is the Marion ISD Board of Trustees, which has 'exclusive policymaking authority under Texas law.'"  *Id.* (quoting *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).  And it reasoned:

> the record shows that the grievances at issue were not presented to the Board until May 2012, after all the incidents described above occurred.  Although the record indicates that some of the incidents were reported to Marion ISD administrators and the interim superintendent, those individuals have not been delegated policymaking authority under Texas law.  *See Rivera*, 349 F.3d at 247 (noting that the plaintiffs could point to no law "empowering the Board with the authority to delegate its exclusive policymaking authority"); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1251 (5th Cir. 1993) ("Under Texas law such policymaking authority rests exclusively with the [Board], and there is no evidence they had delegated it to [the superintendent].").  Thus, even assuming the alleged customs,

> policies, and failures to train existed among Marion ISD
> employees, "[t]here is no evidence that the Board knew of this
> behavior or condoned it." *Rivera*, 349 F.3d at 250.

*Id.* (brackets in original). The court explained that "the Board had previously implemented official policies prohibiting racial discrimination, bullying, and harassment." *Id.* (citing *Rivera*, 349 F.3d at 250). And, after one particular incident, "Marion ISD instituted additional anti-discrimination and anti-harassment training facilitated by the DOJ and provided by an unaffiliated organization." *Id.*

Here, as in *Fennell*, a reasonable trier of fact could only find that many of the incidents were reported to IISD administrators and the Superintendent, but "those individuals have not been delegated policymaking authority under Texas law." *Id.* And the record shows that the Board—IISD's final policymaker—first learned of any discrimination and retaliation against plaintiffs after the allegedly unconstitutional conduct ended. *Id.* The Board learned of plaintiffs' complaints in connection with the Level 3 hearing that it conducted on June 17, 2013. To prepare for the hearing, the Board reviewed Stearns-Miller's report dated April 19, 2013. Chen resigned on July 3, 2012, Clemmer resigned on July 25, 2012, and Hill does not allege that any discrimination or retaliation was still occurring in the summer of 2013. Moreover, the evidence shows that the Board reviewed Mattison's report in connection with its Level 3 hearing, and plaintiffs do not provide any evidence that the Board received Mattison's report before this time.[4] "Thus, even assuming

---

[4]It also is undisputed that any retaliation against Chen and Clemmer ended before Mattison finished her report. Mattison investigated plaintiffs' grievances filed on June 18,

the alleged customs . . . existed among [IISD] employees, '[t]here is no evidence that the Board knew of this behavior or condoned it.'"  *Id.* (quoting *Rivera*, 349 F.3d at 250).

The Board had also previously implemented official policies prohibiting discrimination and retaliation.  *See id.*  And, once the Board conducted a Level 3 hearing on plaintiffs' complaints, it voted unanimously to uphold Stearns-Miller's decision, and adopted her recommendations to remedy any possible discrimination or harassment, which included, among other things, that IISD conduct diversity, professionalism, and defamation training. *See id.*  Plaintiffs do not cite any evidence that would enable a reasonable trier of fact to find that the Board failed to implement Stearns-Miller's recommendations.

The only evidence that plaintiffs cite to support their alleged policies or customs is the written terms of IISD's local policy.  But plaintiffs do not cite any evidence in support of their allegation that the Superintendent and/or Board violated this IISD policy.  The court therefore concludes that plaintiffs have not produced sufficient evidence for a reasonable jury to find that IISD had a custom or practice of discriminating or retaliating against plaintiffs.

Accordingly, the court dismisses plaintiffs' constitutional First Amendment (retaliation) and Fourteenth Amendment (equal protection) claims.

C

IISD contends, *inter alia*, that plaintiffs have not established that their deprivation of constitutionally protected property interests was caused by an IISD policy or custom.  Even

---

2012, and plaintiffs first received Mattison's report around December 4, 2012, well after Chen and Clemmer resigned.

assuming *arguendo* that IISD deprived plaintiffs of their Fourteenth Amendment due process rights, plaintiffs do not present any evidence that would enable a reasonable jury to find that IISD formally adopted a policy or had an informal custom or practice giving rise to any due process violations. *See, e.g., Pollard v. City of Dallas*, 1998 WL 345557, at *2 (N.D. Tex. June 11, 1998) (Fitzwater, J.) (granting summary judgment when plaintiff failed to introduce evidence that would permit reasonable trier of fact to find existence of policy, custom, or practice of violating constitutional procedural due process rights); *T.R. Hoover Cmty. Dev. Corp. v. City of Dallas*, 2009 WL 2001442, at *5 (N.D. Tex. July 9, 2009) (O'Connor, J.) (same).

Accordingly, the court dismisses plaintiffs' Fourteenth Amendment due process claim.

IV

The court now turns to plaintiffs' Title VII claims. IISD moves to dismiss Hill's hostile work environment claim on the ground, *inter alia*, that Hill failed to exhaust her administrative remedies.

A

Before an individual can pursue a Title VII claim in federal court, she must exhaust her available administrative remedies by "fil[ing] a timely charge with the EEOC and receiv[ing] a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)); *see also Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *3 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010). The lawsuit that follows

- 11 -

is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990) (citing *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). In other words, the complaint may encompass any kind of discrimination "like or related to" allegations contained in the EEOC charge. *Sanchez*, 431 F.2d at 466; *see also Vuyanich v. Republic Nat'l Bank of Dall.*, 723 F.2d 1195, 1201 (5th Cir. 1984). "Because a person filing an EEOC charge is usually not represented by counsel, the court must not strictly construe the EEOC charge and require the complainant to allege every instance of discrimination." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citing *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)). Moreover,

> when determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the document during the course of the EEOC investigation.

*Id.* at *6.

## B

IISD contends that Hill's hostile work environment claim exceeds the scope of her formal EEOC charge of discrimination. Plaintiffs do not appear to challenge that Hill's EEOC charge does not cover this claim; rather, they maintain that the court should read Hill's EEOC charge in light of her intake questionnaire and its attachments, and an additional

- 12 -

complaint affidavit, that were submitted to the EEOC before her EEOC charge.

It is undisputed that Hill's intake questionnaire and other filings cover her hostile work environment claim. But the court cannot consider these filings in construing the scope of Hill's EEOC charge because plaintiffs have "failed to present any evidence that [IISD] had notice of these filings or their contents." *Evenson v. Sprint/United Mgmt. Co.*, 2008 WL 4107524, at *3 (N.D. Tex. Aug. 21, 2008) (Fitzwater, C.J.) (citations omitted) (holding that EEOC charge could not be construed in light of charge questionnaire, intake questionnaire, and layoff questionnaire, even though all clearly alleged sex discrimination, because plaintiff failed to present any evidence that employer had notice of contents of those filings); *see also Kretchmer*, 2009 WL 854719, at *5 (holding that EEOC charge could not be construed in light of charge questionnaire because plaintiff failed to present any evidence that employer had notice of this filing or its contents); *Kelly v. Capital One Auto Fin.*, 2008 WL 2653202, at *4 (N.D. Tex. July 7, 2008) (Fitzwater, C.J.) (holding that EEOC charge could not be construed in light of letter filed with EEOC, in part because plaintiff did not allege that employer had notice of contents of letter). The court is therefore limited to the four corners of Hill's EEOC charge when determining whether she exhausted her hostile work environment claim.

In her EEOC charge, Hill alleged:

> upon returning from FMLA leave, I learned that I was being transferred to a new department. According to the district requirements, my position should have been held for at least one year. Moreover, my position vacancy was advertised while I was on leave and I was not consulted about retaining my old

position.

D. App. 33.  Although not dispositive of the exhaustion question, she checked only the box marked "race."  *Id.*; *see also Sharp v. Texas Dep't of Family & Family & Protective Servs.*, 2014 WL 2475894, at *2 (N.D. Tex. June 3, 2014) (Fitzwater, C.J.) (citing *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006)).   And Hill stated in her "Statement of Discrimination" on the same form: "I believe I have been discriminated against because of my race (Black), in violation of Title VII."  D. App. 33.

Hill's EEOC charge does not mention a hostile work environment, and an EEOC investigation of an alleged hostile work environment could not reasonably be expected to grow out of the facts alleged in that form (i.e., her transfer based on racial discrimination). *See, e.g., Hayes*, 2004 WL 1283965, at *7 (dismissing plaintiff's hostile work environment claim because her EEOC charge did not mention a hostile work environment, and the facts alleged, which related to race discrimination in being denied promotions and paid lower wages, did not adequately assert hostile work environment claim).  The court concludes that the scope of Hill's EEOC charge does not reasonably cover her hostile work environment claim.  Accordingly, Hill did not administratively exhaust her hostile work environment claim, and the claim must be dismissed.

V

IISD next asserts that Clemmer's hostile work environment claim should be dismissed on the ground that Clemmer failed to exhaust her administrative remedies.  IISD avers that this claim exceeds the scope of Clemmer's EEOC charge.  Plaintiffs do not appear to

challenge this assertion; rather, they contend that the court should construe Clemmer's EEOC charge in light of her intake questionnaire and its attachments. But the court cannot consider these filings in construing the scope of Clemmer's EEOC charge because, as with Hill's hostile work environment claim discussed above, plaintiffs have failed to present any evidence that IISD had actual knowledge of the contents of these documents during the course of the EEOC investigation. *See Evenson*, 2008 WL 4107524, at *3 (citations omitted). The court is therefore limited to the four corners of Clemmer's EEOC charge.

In her EEOC charge, Clemmer alleged that, "[a]fter complaining of racial bias and a hostile work environment against [Lusty], I was denied a promotion by her on various occasions," and that "I believe I have been discriminated against because of my race—black, color, national origin, as well as retaliated against." D. App. 49. And, while not dispositive, she checked the boxes marked "race," "color," "national origin," and "retaliation." *Id.* On that same form, Clemmer stated that the discrimination took place from May 12, 2012 until December 12, 2012, and she did not check the box for "continuing action." *Id.* IISD contends that Clemmer resigned on July 25, 2012, and thus the majority of the alleged discrimination occurred after her resignation.

Courts have held that an EEOC charge alleging failure to promote and retaliation does not cover a hostile work environment. *See, e.g., Wesley v. Yellow Transp., Inc.*, 2008 WL 294526, at *6 (N.D. Tex. Feb. 4, 2008) (Fitzwater, C.J.) (holding that plaintiff's EEOC charge for racial discrimination and retaliation for picketing against company did not exhaust administrative remedies for hostile work environment claim); *see also Zavala v. Carrollton-*

- 15 -

*Farmers Branch Indep. Sch. Dist.*, 2015 WL 9269416, at *5 (N.D. Tex. Dec. 21, 2015) (Boyle, J.) (holding that plaintiff's EEOC charge based on non-continuing, discrete discriminatory acts of failure to promote and retaliation did not exhaust administrative remedies for hostile work environment claim).

This case would require a straightforward application of settled law but for Clemmer's reference to a "hostile work environment" in her EEOC charge. But the court nevertheless concludes that Clemmer's EEOC charge did not cover her hostile work environment claim. Clemmer did not allege in her EEOC charge that she was subjected to a hostile work environment. Instead, she asserts that she was retaliated against (denied a promotion) after she complained about a hostile work environment and racial bias against Lusty. This is a materially different sort of complaint that is insufficient for exhaustion purposes. *See, e.g., Turner v. Medicenter Bryant*, 2004 WL 1923993, at *1 (N.D. Tex. Aug. 27, 2004) (Cummings, J.) (concluding, *inter alia*, that scope of plaintiff's EEOC charge did not cover claims for sex discrimination or sexual harassment when she only marked the box indicating "retaliation" and alleged that she was "terminated from [her] position in retaliation for *reporting* sexual harassment" but "did not charge that she was sexually harassed" and did not allege sex discrimination) (emphasis added). Clemmer's EEOC charge is also devoid of any of the facts alleged in the second amended complaint regarding her hostile work environment claim. *See Spears v. DSM Copolymer, Inc.*, 103 F.3d 124, 1996 WL 731356, at *1 (5th Cir. 1996) (per curiam) (unpublished table decision) (examining plaintiff's complaint in light of his EEOC charge to determine whether claims in complaint could reasonably be expected to

grow out of claim in EEOC charge).  Rather, the only harm Clemmer identifies in her EEOC charge is the denial of promotions.

If an individual complains to the EEOC that she was denied a promotion because she reported a hostile work environment, the EEOC could reasonably be expected to investigate whether she actually *reported* such a claim, and, in some instances, it might reasonably be expected to investigate whether she was in fact *subjected to* a hostile work environment.  But this is not the case on these facts.  According to Clemmer's EEOC charge, the discrimination was not continuing, it consisted solely of discrete acts (failures to promote), and it occurred from May 12, 2012 through December 12, 2012—a period of time mostly after Clemmer's last day of work with IISD (June 12, 2012) and her date of resignation (July 25, 2012).  And most of Clemmer's allegations regarding a hostile work environment in the second amended complaint took place between 2009 and spring 2012, well before the earliest possible date of discrimination listed on the EEOC charge.  Moreover, Clemmer does not appear to seriously challenge the premise that her EEOC charge is inadequate; instead, she focuses on the premise that the court should construe her EEOC charge in light of her intake questionnaire and its attachments.  The court therefore concludes that Clemmer's hostile work environment claim could not reasonably be expected to grow out of her EEOC charge, and that she did not exhaust her administrative remedies for that claim.

Accordingly, IISD is entitled to summary judgment dismissing Clemmer's hostile work environment claim.

VI

IISD appears to assert that Clemmer's retaliation claim should be dismissed for failure to exhaust her administrative remedies.[5]  Clemmer's EEOC charge, however, clearly covers her retaliation claim.  In her EEOC charge, Clemmer states: "I believe that I have been discriminated against because of my race—black, color, national origin, as well as retaliated against," and she also checked the box for "retaliation."  D. App. 49.  Accordingly, IISD is not entitled to summary judgment dismissing Clemmer's retaliation claim based on her failure to administratively exhaust the claim.

VII

IISD moves, *inter alia*, for summary judgment dismissing Chen's Title VII claims as time-barred.  "In a deferral state such as Texas, an aggrieved party must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful practice occurred." *Clemmer II*, 2015 WL 1757358, at *2 (citing 42 U.S.C. § 2000e-5(e)); *see also Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 554-55 (5th Cir. 1987).  "[T]he 300-day filing period is not jurisdictional; it is more akin to and operates as a limitations period, commencing on the date the alleged unlawful practice occurred." *Id.* (citing *Adams v. Cedar Hill Indep. Sch.*

---

[5]In its summary judgment brief, IISD contends that Clemmer's "Title VII claims should be dismissed for failure to exhaust her administrative remedies, except as to her failure-to-promote claims."  D. Br. 12.  This statement inferentially includes Clemmer's retaliation claim.  IISD then alleges for the first time in its reply that Clemmer's only Title VII claims are for a hostile work environment and discrimination, based on IISD's failure to promote her.  The second amended complaint, however, appears to allege a retaliation claim as to Clemmer, and IISD cannot raise for the first time in its reply that such a claim was not asserted.

- 18 -

*Dist.*, 2014 WL 66488, at *2 (N.D. Tex. Jan. 8, 2014) (Fitzwater, C.J.)).

IISD maintains that Chen's EEOC charge alleges that the last date of the alleged discrimination was July 3, 2012 (i.e., the date she resigned), and that Chen filed her EEOC charge on May 10, 2013, after the 300-day filing period. Plaintiffs neither dispute the date of Chen's last alleged injury nor do they attempt to rely on equitable tolling. Rather, they maintain for two reasons that Chen's EEOC charge was timely. First, plaintiffs contend that Chen's intake questionnaire, which she signed on December 12, 2012 and the TWCCRD and EEOC received on December 17, 2012 and December 19, 2012, respectively, should be treated as her charge. But plaintiffs do not present any evidence that IISD was given notice of Chen's intake questionnaire or its contents, so the intake questionnaire cannot constitute a charge of discrimination. *See, e.g., Evenson*, 2008 WL 4107524, at *5.[6]

_____

[6]In *Evenson* the court elaborated on this notice requirement. *See Evenson*, 2008 WL 4107524, at *5. It explained that in *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74 (5th Cir. 1982), the Fifth Circuit "treated a plaintiff's unverified, EEOC intake questionnaire as a Title VII charge of discrimination for the purpose of satisfying the time limitation for filing a charge," and in doing so, "the court noted that the intake questionnaire satisfied the minimum requirements of § 1601.12(b) and that the EEOC initially treated the intake questionnaire as a charge by initiating the administrative process." *Id.* (citing *Price*, 687 F.2d at 76-79). The court also stated:

> just two days after the plaintiff in *Price* completed the intake questionnaire, the plaintiff's employer received notice of its contents. [*Price*, 687 F.2d] at 79. The court concluded that the employer's receipt of notice of the intake questionnaire's allegations "fulfilled the congressional purpose for imposing a filing limitation, the provision of prompt notice to the employer[.]" *Id.* (internal quotation marks omitted). The *Price* opinion did not indicate, however, whether an EEOC questionnaire could be considered a charge of discrimination in

- 19 -

Second, plaintiffs appear to aver that the EEOC did not consider Chen's claims to be untimely.  And they maintain that, in Chen's right to sue letter from the EEOC, the EEOC stated the reason why it closed the file, and the EEOC did not check the box stating that "[y]our charge was not timely filed with EEOC." Ps. Br. 18 (quoting Ps. App. 36).  Plaintiffs do not, however, cite any cases holding that the right to sue letter from the EEOC controls whether a plaintiff's claims are timely, nor do they assert that the EEOC misled Chen.

Accordingly, because Chen's EEOC charge was filed more than 300 days after her last alleged injury, the court dismisses all of her Title VII claims as time-barred.

## VIII

IISD moves for summary judgment dismissing Hill's Title VII racial discrimination claim based on her transfer on the ground that she has not established a prima facie case of discrimination.

---

the absence of the employer's notice of its contents or without the EEOC's actually treating the intake questionnaire as a formal charge.  But a later, unpublished Fifth Circuit opinion construe[d] *Price* as requiring notice to the employer and EEOC administrative action before an intake questionnaire suffices as a formal charge. *See Harris v. David McDavid Honda*, 213 Fed. Appx. 258, 262 (5th Cir. 2006) (per curiam) ("[Q]uestionnaire was sufficient because the charged party had notice of the allegations contained in the questionnaire and the EEOC had already investigated the allegations of the questionnaire." (summarizing the holding of *Price* )).

*Id.*

A

Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). Because Hill relies on circumstantial evidence to support her discrimination claim, she must proceed under the familiar *McDonnell Douglas* burden-shifting framework. *See Paske v. Fitzgerald*, 785 F.3d 977, 984-85 (5th Cir.), *cert. denied*, ___ U.S. ___, 136 S.Ct. 536 (2015). In the first stage of *McDonnell Douglas*, she must establish a prima facie case of discrimination, which requires that she show that she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). In this case, only the third element is contested.

In support of her race discrimination claim, Hill alleges that, during the 2011-2012 school year, she served as a Middle School Special Education Coordinator. At the end of that school year, Hill was placed on leave on the recommendation of her physician. While Hill was on leave, IISD filled the Middle School Special Education Coordinator position. Before Hill returned from leave, she was informed that she was being transferred from the Special Education Department and would instead serve as Elementary Dean. Hill alleges that the Elementary Dean position was a "bogus job which essentially stripped her of a

- 21 -

prestigious title and rendered her teaching certificate moot," 2d Am. Compl. ¶ 138, and that, as Elementary Dean, she was no longer required to use her background in Special Education.

## B

For purposes of Title VII, a transfer that serves as a demotion qualifies as an adverse employment action. *See Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)); *accord Alvarado v. Tex. Rangers*, 492 F.3d 605, 612-13 (5th Cir. 2007). "Whether a transfer is objectively worse is a question of fact." *Fisher v. Dallas Cnty.*, 299 F.R.D. 527, 537 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *Sharp*, 164 F.3d at 933). But "in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (citing *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001)).

IISD asserts that Hill's lateral transfer does not qualify as an adverse employment action. It maintains that Hill testified that she was never demoted, her salary and job responsibilities were never reduced, she was never assigned menial or degrading work, and her salary only increased. Hill also testified that she was not seeking to be transferred back

into the Special Education Department at IISD, and that she believed that IISD was "looking out for [her] best interests" by transferring her, and that "for the most part, it was." D. App. 255. Hill further testified that she did not have any problems with her new supervisor, was okay with her new position, and did not have any serious complaints. Finally, Hill acknowledged that, based on the official description, the Elementary Dean position was a leadership position, and a bachelor's degree was required, and a master's degree was preferred, for that position.

Hill maintains that her transfer was a demotion.[7] She cites her testimony that she was removed from a job that she loved in the Special Education Department, and that the Elementary Dean position "does not allow her to utilize her skill set and impedes any room for growth." Ps. Resp. 4. But Hill's claim that her reassignment from Middle School Special Education Coordinator to Elementary Dean "was a less prestigious or desirable transfer, without more, would not lift h[er] over the hurdle of summary judgment for the purpose of an adverse employment action." *Pegram*, 361 F.3d at 283. Because Hill does not present any evidence (or even assert in the briefing) that another action, other than her transfer, constitutes an adverse employment action with respect to this claim, Hill has not established a prima facie case of discrimination.

Accordingly, Hill's discrimination claim is dismissed.

_____

[7]Plaintiffs do not clearly respond to IISD's merit-based arguments regarding Hill's race discrimination claim. In their response briefing, plaintiffs address whether Hill's transfer constitutes an adverse employment action but it is unclear whether this assertion is limited to Hill's retaliation claim or if it also applies to her race discrimination claim.

IX

IISD moves for summary judgment dismissing Hill's Title VII retaliation claim based on her transfer.  It maintains that Hill has not established a prima facie case of retaliation.

Title VII prohibits an employer from taking an adverse employment action against an employee who engages in a protected activity.  *See* 42 U.S.C. § 2000e–3(a).  To establish a prima facie case of retaliation, Hill must prove that: (1) she participated in an activity protected by Title VII; (2) IISD took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).  Only the second element is at issue.

IISD contends that Hill's lateral transfer does not qualify as an adverse employment action.  Hill responds that she "was retaliated against and ultimately she did suffer an adverse employment action while out on [leave]. . . . [She] was demoted.  This was not a 'lateral' transfer."  Ps. Br. 15-16.  The court has discussed above all of the evidence relating to Hill's transfer and has concluded that she has failed to raise a fact issue concerning whether her transfer constituted an adverse employment action for purposes of Title VII.  Because Hill does not present any evidence (or even allege in the briefing) that another action, other than her transfer, constitutes an adverse employment action with respect to this claim, the court concludes that she has not established a prima facie case of retaliation.

Accordingly, the court dismisses Hill's retaliation claim.

- 24 -

X

IISD moves for summary judgment dismissing Clemmer's Title VII discrimination claim based on IISD's failure to promote her.

A

Title VII prohibits an employer from failing to promote an employee on the basis of her race. *See* 42 U.S.C. § 2000e–2(a)(1). Because Clemmer relies on circumstantial evidence to support her claim, she must proceed under the familiar *McDonnell Douglas* burden shifting framework. *See, e.g., Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013). As modified, *McDonnell Douglas* consists of three stages. First, to challenge a failure to promote, Clemmer must establish a prima facie case of discrimination, demonstrating that (1) she was not promoted, (2) she was qualified for the position she sought, (3) she fell within a protected class at the time of the failure to promote, and (4) IISD either gave the promotion to someone outside of that protected class or otherwise failed to promote Clemmer because of her race. *Id.* (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

Second, the burden shifts to IISD to articulate a legitimate, nondiscriminatory reason for the employment action taken against Clemmer. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). IISD's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th

- 25 -

Cir. 2010) (per curiam) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

Third, "'the burden shifts back to [Clemmer] to make an ultimate showing of intentional discrimination.'" *Campbell v. Zayo Grp., LLC*, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015) (Fitzwater, J.) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)). She must "prove either that [IISD's] articulated reason is merely a pretext for race discrimination (the pretext alternative), or that [IISD's] reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is [Clemmer's] protected characteristic (the mixed-motives alternative)." *Autry*, 704 F.3d at 347 (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that [IISD] intentionally discriminated against [Clemmer] remains at all times with [Clemmer].'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

In support of her discrimination claim, Clemmer alleges that IISD failed to promote her to three positions for which she applied: Assistant Principal, Principal, and Special Education Coordinator. She maintains that Chapman told her that she did not get an interview for the Principal position because only sitting Assistant Principals were interviewed, even though the job posting did not contain this requirement. Clemmer alleges that she was not interviewed for the Assistant Principal position because "IISD wanted to keep her in the Special Education [D]epartment to force her out." Compl. ¶ 101. As to the

Special Education Coordinator position, Clemmer alleges that, although she interviewed for the position, JoAnn Wiechmann ("Wiechmann"), "a Caucasian woman who is very good friends with [the Assistant Superintendent of Student Services and Federal Programs]," was selected. *Id.* at ¶ 107. Clemmer contends that Lusty set up the interviews for this position, chose individuals to sit on the interview panel who knew nothing about Special Education, was the only one asking questions during the interviews, and asked Clemmer a question that no qualified applicant would have been able to answer. Clemmer also contends that Wiechmann's candidate profile was quickly updated after her interview, but that her candidate profile was never updated. Finally, Clemmer posits that Wiechmann was essentially given the Special Education Coordinator position before interviews were even conducted.

B

IISD contends that plaintiffs have not established the fourth prima facie element as to the Assistant Principal and Principal positions. Regarding the Assistant Principal position, IISD cites Clemmer's testimony that she did not know which Assistant Principal positions were open, which positions were filled, or who received the positions. Clemmer does not attempt to respond to IISD's argument, nor does she present any evidence in support of the fourth prima facie element. This is insufficient to meet her burden.

Regarding the Principal position, IISD relies on Clemmer's testimony that the only two promotions she believed were discriminatory or retaliatory were the Assistant Principal and Special Education Coordinator promotions. Clemmer does not allege who received

- 27 -

interviews or the Principal position.  Rather, she relies solely on the fact that Chapman told her that only Assistant Principals were interviewed.  Clemmer maintains that the listing for the Principal position did not include a requirement that the applicant be a sitting Assistant Principal.  But the listing is not in the summary judgment evidence.  Clemmer also contends that she testified that this had not been a requirement before, and that she knew several Principals who were not previously Assistant Principals.  But she does not cite her testimony, and the only evidence that she cites is the second amended complaint, which is not offered to prove the truth of the matter asserted.  Clemmer does not allege, much less present evidence, that Chapman misrepresented the application process (i.e., who was interviewed) or that the rule excluding applicants who were not sitting Assistant Principals was only enforced against Clemmer or was adopted in order to exclude Clemmer.  The court therefore concludes that Clemmer has not created a fact issue with respect to the fourth prima facie element for the Assistant Principal and Principal positions.

Accordingly, IISD is entitled to summary judgment dismissing Clemmer's failure to promote claim based on the Assistant Principal and Principal positions.

C

IISD contends that Clemmer has not satisfied the third *McDonnell Douglas* stage—i.e., she has not rebutted IISD's legitimate, nondiscriminatory reason for not promoting Clemmer to Special Education Coordinator.  IISD assumes *arguendo* that Clemmer has established a prima facie case for this promotion: (1) she was not promoted to Special Education Coordinator, (2) she was qualified, (3) she is African American, and (4)

- 28 -

IISD gave the promotion to Wiechmann, a Caucasian.  *See Autry*, 704 F.3d at 347.  IISD has produced evidence in the form of the affidavit of Lusty, who was on the interview panel for this position, that it selected Wiechmann because, based on her experience and interview performance, she was more qualified than Clemmer.  IISD also relies on Wiechmann's resume, which shows that she was serving as Coordinator of Special Education Evaluation for another school district, was in the process of earning a doctorate in Education Administration, and had nearly 20 years of experience working with special education students.

Because IISD has met its burden of producing evidence of a legitimate, nondiscriminatory reason for not promoting Clemmer, the burden shifts back to Clemmer to offer sufficient evidence to create a genuine issue of material fact that either "[IISD's] articulated reason is merely a pretext for race discrimination (the pretext alternative), or that [IISD's] reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is [Clemmer's] protected characteristic (the mixed-motives alternative)."  *Autry*, 704 F.3d at 347 (citing *Vaughn*, 665 F.3d at 636).  Clemmer is not proceeding under the pretext alternative because she does not provide any evidence (or even allege in the briefing) that she was as qualified or more qualified than Wiechmann.  It therefore appears that Clemmer is proceeding under the mixed-motive alternative.  If Clemmer demonstrates that race was a motivating factor in the decision not to promote her, IISD must "'prove that the same adverse employment decision would have been made regardless of discriminatory animus.'"  *Ajao v. Bed Bath & Beyond, Inc.*, 265 Fed. Appx. 258, 264 (5th Cir. 2008) (per

curiam) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005)).

Clemmer relies on her and Wiechmann's candidate profiles, and she contends that the different treatment of their candidate profiles shows that she was not promoted because of her race. Clemmer avers that Wiechmann interviewed for the position on June 19, 2012, and that by the next day, Lusty had updated Wiechmann's candidate profile with a five star rating, a verification of her references, and a recommendation that she be the only finalist for the position. But according to Clemmer, she interviewed on June 20, 2012, and her candidate profile was never updated to reflect that she interviewed for the position, she was not given a rating, her reference checks were not verified, and there was no recommendation regarding the position.

"Although [plaintiffs] ha[ve] produced circumstantial evidence of discrimination, [they] [have] not created a genuine issue of material fact on whether [Clemmer's] non-promotion was due to race." *Ajao*, 265 Fed. Appx. at 264 (holding that defendant satisfied its burden by providing legitimate, nondiscriminatory reason for not promoting plaintiff (because of his poor work performance), and concluding that although plaintiff offered circumstantial evidence of discrimination, he did not create genuine issue of material fact on whether defendant's failure to promote was motivated by discrimination rather than his poor performance because he did not dispute his poor attendance or the necessity of a good attendance record for promotion to assistant store manager). Here, Clemmer does not attempt to dispute that Wiechmann was more qualified than she, or that the more qualified candidate should receive the position. Accordingly, Clemmer has not created a genuine issue

of material fact concerning whether IISD's failure to promote her was motivated by racial

discrimination or on the basis that she was less qualified than the candidate chosen. *See id.*;

*see also Autry*, 704 F.3d at 349.

Accordingly, the court dismisses Clemmer's discrimination claim based on IISD's

failure to promote her to Special Education Coordinator.

*   *   *

In sum, the court grants summary judgment dismissing all of the claims of Hill and

Chen.  By Rule 54(b) final judgment filed today, it dismisses the actions of Hill and Chen

with prejudice.  The court dismisses all of Clemmer's claims except her Title VII retaliation

claim.[8]

**SO ORDERED**.

March 22, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[8]Because the court is granting summary judgment in favor of IISD as to all of the claims concerning which it has objected to plaintiffs' summary judgment evidence, the court denies IISD's motion to strike plaintiffs' summary judgment evidence as moot.